The Honorable Salvador Mendoza, Jr.

Gary Sparling, WSBA # 23208
**Soha & Lang, P.S.**
1325 Fourth Avenue, Suite 2000
Seattle, WA  98101-2570
Telephone:  206-624-1800
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

THE CINCINNATI INSURANCE
COMPANY, an Ohio corporation; and
THE CINCINNATI INDEMNITY
COMPANY, an Ohio corporation,

                                    Plaintiffs,

            vs.

ZAYCON FOODS, LLC, a Washington
limited liability company; FRANK
MARESCA and JANE DOE
MARESCA, husband and wife, and the
marital community composed thereof;
MICHAEL GIUNTA and JANE DOE
GIUNTA, husband and wife, and the
marital community composed thereof;
MIKE CONRAD and JANE DOE
CONRAD, husband and wife, and the
marital community composed thereof;
ADAM KREMIN and JANE DOE
KREMIN, husband and wife, and the
marital community composed thereof;

Cause No. 2:17-cv-00140 SMJ

**PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

**September 29, 2017
Without Oral Argument**

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

and RICHARD BRADDOCK, an
individual,

                         Defendants.

## RELIEF REQUESTED

Plaintiffs Cincinnati Insurance Company and Cincinnati Indemnity Company (collectively "Cincinnati") move this Court for summary judgment declaring that they have no obligation to defend, indemnify, or pay any benefits to or on behalf of any defendant with respect to the underlying lawsuit, *Braddock v. Zaycon Foods, LLC, et al.,* U.S. District Court for the Western District of Washington, Case No. 16-cv-01756 TSZ (the "Underlying Suit"). Summary judgment should be granted because the Underlying Suit does not allege any claims that could conceivably fall within any of the coverages provided in the Cincinnati insurance policies issued to Defendant Zaycon Foods, LLC (collectively, the "Policies").[1]

## STATEMENT OF ISSUES

1.     Whether the Underlying Suit alleges "bodily injury" or "property damage" caused by an "occurrence," as is required under Coverage A in the Policies.

---

[1] Defendants Frank Maresca, Michael Giunta, Mike Conrad, and Adam Kremin will be referenced herein, collectively, as the "Individual Defendants."

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

2.      Whether the Underlying Suit alleges "personal and advertising injury," as is required under Coverage B in the Policies.

3.      Whether the Underlying Suit alleges any claim for negligence in the "administration" of Zaycon's "employee benefit plan," as is required under the Employee Benefits Liability coverage in the Policies.

4.      Whether the Underlying Suit alleges any claim that could fall within the Policies' umbrella liability coverage for "bodily injury," "property damage," or "personal and advertising injury."

5.      Whether the Underlying Suit alleges any claim that could fall within the Policies' umbrella Employee Benefits Liability coverage.

## AUTHORITY AND ARGUMENT

### A.    This Motion Presents A Straight-Forward Question Of Law That Is Ripe For Summary Judgment.

Interpretation of an insurance contract is a question of law that may be resolved on summary judgment. *Quadrant Corp. v. American States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party bears the initial burden of showing there is no material factual

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 3
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

dispute and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Industrial Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

Under Washington law, insurance policies are to be construed as contracts. *Quadrant, supra*, 154 Wn.2d at 171. The insurance contract is to be considered as a whole and given a fair, reasonable, and sensible construction, as would be given to the contract by the average person purchasing insurance. *Id*. If the policy language is clear and unambiguous, it must be enforced as written; a court may not modify the policy language or create ambiguity where none exists. *Id*.

As will be discussed below, the absence of coverage is clear when the plain language in Cincinnati's Policies is applied to the allegations in the Underlying Suit. Summary judgment should therefore be entered in Cincinnati's favor without further delay.

**B.    The Underlying Suit Alleges No "Bodily Injury" Or "Property Damage," As Is Required Under Coverage A In The Policies.**

Coverage A in the Policies applies to "bodily injury" and "property damage" caused by an "occurrence."[2]    "Bodily injury" is defined as "bodily

---

[2] Sparling Dec. Ex. A at p. 11; Ex. B at p. 77; Ex. C at p. 142; Ex. D at p. 210 (Cincinnati Policies).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 4
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[3]  "Property damage" is defined as "physical injury to tangible property" and as "loss of use of tangible property that is not physically injured."[4]  The Policies define "occurrence" as "an accident."[5]

Braddock's Complaint in the Underlying Suit includes the following allegations:

> 35. In mid-2014, based on the breadth of Braddock's experience and his willingness to invest in start-up ventures, Defendants sought out Braddock and solicited his investment in Zaycon.
>
> 36. Defendants thereupon made a series of fraudulent, reckless and/or negligent misrepresentations and omissions to Braddock.
>
> 37. Certain of these fraudulent, reckless and/or negligent misrepresentations and omissions were contained in the Second Amended and Restated Operating Agreement of Zaycon Foods dated November 1, 2012 (the "Operating Agreement")[.]
>
> * * *
>
> 49. In addition, during these meetings and telephone conversations, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants, failed to inform Braddock that . . . h) Maresca owned at least 1,000,000 more voting units than the number of voting units set forth in Zaycon's Operating Agreement; . . . k) Kremin owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; . . . n)

---

[3] Sparling Dec. Ex. A at p. 27; Ex. B at p. 92; Ex. C at p. 157; Ex. D at p. 225.

[4] Sparling Dec. Ex. A at p. 30; Ex. B at p. 96; Ex. C at p. 161; Ex. D at p. 229.

[5] Sparling Dec. Ex. A at p. 29; Ex. B at p. 95; Ex. C at p. 160; Ex. D at p. 228.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 5
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

Conrad owned at least 1,625,000 more voting units than the number of voting units described in Zaycon's Operating Agreement; and o) Giunta owned over 3,000,000 voting units which were not referenced in the Operating Agreement (together with the omissions in the Operating Agreement, the "Omissions").

50. During the period from mid-2014 through January 2016, each of the Individual Defendants, acting on behalf of himself and Zaycon and the other Individual Defendants continued to make the Misrepresentations and Omissions, orally and in writing, to Braddock in connection with solicitations of additional capital and loans from Braddock.

\* \* \*

69. All of Braddock's investments [in Zaycon] were made in reliance on representations and omissions made in the Operating Agreement and by Maresca, Giunta, Conrad and Kremin, each of whom was acting on behalf of himself and Zaycon and the other Individual Defendants.

70. All of Braddock's loans [to Zaycon] were made in reliance on representations and omissions made in the Operating Agreement and by Maresca, Giunta, Conrad and Kremin, each of whom was acting on behalf of himself and Zaycon and the other Individual Defendants.

\* \* \*

79. . . . Braddock became Co-managing Member of Zaycon.

\* \* \*

81. . . . Braddock also became Zaycon's Chief Executive Officer and received 250,000 additional Class A membership units in Zaycon in consideration of his services as CEO pursuant to a written agreement.

\* \* \*

89. On or about April 14, 2016, a private equity firm based in Boston, Massachusetts by the name of Great Hill Partners ("Great Hill") submitted a proposal to make an investment of $25 million to buy into Zaycon at a pre-money enterprise valuation of $30 million.

101. [Defendants Maresca, Giunta, Conrad and Kremin] feared that Great Hill's investment would change the power structure in the Company.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 6
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

102. In particular, Defendants Maresca, Giunta, Conrad and Kremin feared that with Great Hill and Braddock being the largest investors in the Company, and with Braddock exercising management control in his capacity as Co-managing Member and CEO, they would no longer be able to control the Company.

\* \* \*

104. . . . Defendants Maresca, Giunta, Conrad and Kremin commenced looking for a way to get rid of Braddock but to hold onto Great Hill.

\* \* \*

109. [I]n an attempt to get rid of Braddock and protect their investment banking fees, and in the face of increasing division within the Company, Vertical and Shwarts told Maresca, Giunta, Conrad and Kremin that Zaycon could go ahead and fire Braddock and remove him from his position as Co-managing Member because Vertical and Shwarts could close the Great Hill deal even without Braddock.

\* \* \*

111. [A]lthough it had been Braddock's leadership and money which had put Zaycon on a trajectory to raise investment capital and to fulfill its potential in the first place, Defendants Zaycon, Maresca, Giunta, Conrad and Kremin decided to immediately terminate both Braddock's employment and his status as Co-managing Member of the Company.

\* \* \*

117. On April 21, 2016, without any advance notice or warning of their intentions, Defendants Maresca and Giunta informed Braddock that the holders of at least 80% of the Class A membership units of Zaycon had voted to remove him as a manager, and that he was being terminated as an employee.

118. Defendants' termination of Braddock's status as Co-managing Member and termination of his employment as CEO was wrongful for several reasons.

119. First, as the largest single investor in and largest lender to the Company, Braddock had the right to vote over 20% of the voting units of the Company. Doing so would have prevented Braddock's termination as CEO and Co-managing Member.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 7
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

120. Indeed, it was the manipulation of the capitalization structure and capitalization chart of the Company by Defendants Maresca, Giunta, Conrad and Kremin that allowed these Defendants to take the position that they had 80% of the votes necessary to effectuate Braddock's removal as Co-managing Member.

* * *

123. Second, Defendants manipulated the voting process that resulted in the execution of the Consent by fraudulently inducing certain Zaycon members to vote for Braddock's removal, thereby improperly obtaining the 80% majority necessary to oust Braddock as Comanaging Member under the Operating Agreement.

* * *

127. Third, Defendants acted wrongfully by withholding information and documents from Braddock which he needed in order to effectuate his already announced intended exercise of his right to convert the debt owed to him into Class A voting equity, and to exercise his option to buy additional Class A membership units. Braddock's conversion of his debt to Class A voting equity as required by Great Hill and his purchase of additional Class A membership units would have deprived Defendants of their purported 80% voting majority. . . .

* * *

130. Defendants Maresca, Giunta, Conrad and Kremin did so in order to maintain control of the Company.

* * *

144. Defendants' termination of Braddock's employment as CEO left the Company or its members indebted to Braddock under the Operating Agreement in the amount of the value of his membership interest.

* * *

157. Likewise, since the wrongful removal of Braddock as a co-Manager and the wrongful termination of his employment contract, Defendants have prevented or sought to prevent Braddock from obtaining information and documents about Zaycon by interfering with Braddock's attempts to obtain such information and documents from other Zaycon owners and employees.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 8
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

1
2
3
4
5

158. Braddock brings this action to recover damages for violations of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, Washington State securities laws, common law fraud, negligence, breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty in an amount to be established at trial in excess of $6.5 million dollars, and for a declaratory judgment that some or all of the membership units issued to Conrad, Maresca and Kremin and others are void.[6]

6
7
8

While Cincinnati takes no position on the merits of the Underlying Suit, the

9

allegations in Braddock's Complaint describe only a loss of investments and other

10

business-related claims that are not covered by Cincinnati's Policies.   As a

11

preliminary matter, the Underlying Suit does not allege any "bodily injury" as

12

defined in the Policies, because Braddock is not seeking any damages from

13

Zaycon or the Individual Defendants because of any "bodily injury, sickness or

disease."

14
15

Braddock's Complaint likewise alleges no claim for damages because of

16

"property damage."  "Tangible property" means "property 'that has physical form

17

and substance . . . [, t]hat which may be felt or touched, and is necessarily

18

corporeal[.]'"  *Scottsdale Ins. Co. v. International Protective Agency, Inc.*, 105

19

Wn. App. 244, 249, 19 P.3d 1058 (2001) (quoting Black's Law Dictionary at

20

1456 (6th ed. 1990)).  In *Scottsdale*, a bar lost its liquor license after the insured, a

21
22
23

---

[6] Sparling Dec. Ex. E (Complaint in Underlying Suit) at pp. 276, 278-79, 281-83, 285-89, 291-93.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 9
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

6900.00170 jh08ck18cw

security company, failed to prevent a minor from entering the premises. *Id*. at 246-47. The bar sued the insured for negligence and breach of contract, seeking damages for loss of its liquor license and lost business. *Id*. Like Cincinnati's Policies, the Scottsdale policy defined "property damage" as "physical injury to tangible property" and "loss of use of tangible property." *See id*. at 246. Scottsdale declined to defend or cover the insured for the bar's suit.

In subsequent coverage litigation, the Washington Court of Appeals ruled that a liquor license and loss of a business are not "tangible property," because "[a] liquor license is merely representative of a privilege granted by the state and, as such, is intangible property," and "a 'business' is likewise intangible for it merely describes a 'commercial activity engaged in for gain or livelihood.'" *Id*. at 249-50 (quoting Black's Law Dictionary at 198 (6th Ed. 1990)). Accordingly, the bar's loss of its liquor license and consequent loss of business were not "property damage" under Scottsdale's policy, and Scottsdale was not obligated to defend or provide coverage for the bar's lawsuit. *Id.* at 250-51.

Similarly, in *Washington Pub. Util. Dists' Utils Sys. v. Public Util. Dist.*, 112 Wn.2d 1, 14, 771 P.2d 701 (1989), the Washington Supreme Court ruled that an insurance policy covering "the loss of *tangible* property in the care, custody, or control of the insured," did not provide coverage for claims against the insured for loss of utility district funds resulting from a securities investment, because

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 10
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

such a loss is "not damage to tangible property."  (Emphasis in original; footnote omitted.)

Most recently, in *Country Mut. Ins. Co. v. DeAtley*, 2013 WL 6119231 (E.D. Wash. Nov. 21, 2013),[7] this Court ruled that loss of an investment is not "property damage" under a liability insurance policy.  The insured sold conservation tax credits to investors in Colorado; the tax credits were thereafter disallowed by the Colorado Department of Revenue.  The investors sued, alleging that the insured sold the tax credits either with the intent to defraud or with knowledge that they were unlikely to be approved for tax purposes.  *Id.* at *1.  Country Mutual agreed to defend the insured under a reservation of rights, and it also sued for declaratory relief.  In the declaratory action, this Court granted summary judgment for Country Mutual, finding that the tax credits were not "tangible property":

> Unlike real property or chattels, tax credits do not have a physical form or substance that can be detected by the human senses.  Indeed, tax credits are a prime example of *intangible* property; although they have value, they exist solely on paper.  . . .  [T]he Court concludes that the plaintiffs in [the underlying] actions cannot establish injury to and/or loss of use of "tangible property" so as to trigger coverage.
>
> This conclusion is further reinforced by the general rule that "loss of [an] investment does not constitute damage to tangible property" under a commercial general liability insurance policy.  *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 425 (Minn. 1995).  Although

---

[7] A copy of this decision is attached.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 11
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

> Washington courts have not directly addressed this issue, courts in other jurisdictions have consistently ruled that financial losses caused by the sale of fraudulent or misrepresented investments are beyond the scope of standard "property damage" coverage. . . .

*Id.* at *5 (emphasis in original).  Country Mutual, therefore, had no obligation to defend or indemnify its insured against the investors' lawsuits.  *Id.*

In the Underlying Suit, Braddock alleges that he invested and loaned substantial amounts to Zaycon based upon misrepresentations and omissions regarding Zaycon's capital structure, that the Individual Defendants concealed facts relating to the extent of their ownership of Zaycon, that the Individual Defendants manipulated Zaycon's capital structure so that Braddock could not assume control over the company, and that the Individual Defendants manipulated the voting process and conspired to oust Braddock as Zaycon's CEO and co-managing member.  These allegations describe only a loss of investments and other business-related claims that do not qualify as "physical injury to tangible property" or "loss of use of tangible property," as is required for coverage under the Policies.  *Cf. Scottsdale, supra; DeAtley, supra*.  Summary judgment should therefore be granted declaring that Cincinnati has no duty to defend or indemnify with respect to the Underlying Suit under Coverage A.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 12
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

**C.**    **The Underlying Suit Alleges No "Personal And Advertising Injury".**

"Personal and advertising injury" Coverage B in the Policies covers an insured's liability for certain enumerated offenses, such as false arrest, malicious prosecution, wrongful eviction, slander, violating a person's right of privacy, and copyright infringement.[8]

The allegations in the Underlying Suit do not allege any slander, violation of privacy, copyright infringement, or any other "personal and advertising injury" offense listed in Cincinnati's Policies.  *Cf. DeAtley, supra*, at *4 ("personal and advertising injury" coverage does not cover claims for loss of investment or other business-related economic damages).  Thus, summary judgment should likewise be granted with respect to Coverage B.

**D.**    **The Underlying Suit Alleges No Claim That Could Fall Within The Policies' Employee Benefits Liability Coverage.**

The Policies' EBL Coverage applies to liability for negligent acts, errors or omissions in the "administration" of Zaycon's insured's "employee benefit program."[9]  The Policies define "employee benefit program" to include benefits such as medical insurance, profit sharing or pension plans, and employee stock

---

[8] *See* Sparling Dec. Ex. A at pp. 17, 29; Ex. B at pp. 83, 95; Ex. C at pp. 148, 160; Ex. D at pp. 216, 228.

[9] *See* Sparling Dec. Ex. A at p. 35; Ex. B at p. 100; Ex. C at p. 165; Ex. D at p. 233.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 13
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

6900.00170 jh08ck18cw

ownership or subscription plans, so long as such benefits are generally available to all eligible employees.[10]   The term "administration" is defined to include providing information to employees regarding eligibility and scope of an employee benefit program; interpreting and handling records relating to the program; and effecting, terminating or continuing an employee's participation in the program.[11]

As noted above, the Underlying Suit asserts claims based upon alleged misrepresentations and omissions that induced Braddock to invest in Zaycon, and the Individual Defendants' alleged efforts to oust Braddock as an employee and co-managing member of Zaycon.   These allegations do not seek to impose liability on Zaycon or the Individual Defendants because of any negligence in the "administration" of a Zaycon "employee benefit program."

As a preliminary matter, the EBL coverage only applies to negligent errors or omissions; it does not cover liability sounding in contract.  For example, in *First Southern Ins. Co. v. Jim Lynch Enters, Inc.,* 932 F.2d 717 (8th Cir. 1991), the court held that claims based upon the insured's failure to pay an employee pursuant to a stock purchase agreement and failure to determine stock value were

---

[10] Sparling Dec. Ex. A at p. 40; Ex. B at p. 105; Ex. C at p. 170; Ex. D at p. 238.

[11] Sparling Dec. Ex. A at p. 39; Ex. B at p. 104; Ex. C at p. 169; Ex. D at p. 237.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 14
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, STE 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

based upon contract and not negligence; the insured's employee benefits liability coverage therefore did not apply. *Id.* at 719. *See also Granite Outlet, Inc. v. Hartford Cas. Ins. Co.,* 2015 WL 300729 at *5 (E.D. Cal. 2015) (EBL coverage did not apply because insured's failure to pay employees was a breach of contract and not negligence).[12]

Similarly, in the Underlying Suit Braddock alleges, *inter alia*, that the Individual Defendants concealed facts regarding Zaycon's stock ownership, manipulated Zaycon's capital structure to keep him from acquiring control over the company, and improperly removed him as co-managing member and CEO.[13] These claims regarding Braddock's purchase of Zaycon stock are based upon contractual obligations and not negligence, and Cincinnati's EBL coverage therefore does not apply to the Underlying Suit. *First Southern, supra.*

Moreover, Braddock's claims in the Underlying Suit are based on his status as an investor and as Zaycon's co-managing member and CEO. These claims do not allege any error or omission related to the "administration" of an "employee benefit program." For example, in *Maryland Cas. Co. v. Economy Bookbinding Corp. Pension Plan & Trust,* 621 F. Supp. 410 (D.N.J. 1985), the court held that a

---

[12] A copy of this decision is attached.

[13] *See, e.g.,* Sparling Dec. Ex. E at pp. 287-89.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 15
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

company's losses due to poor investments did not involve "administration" of its "employee benefit program." *Id.* at 413-14. The underlying suit in that case alleged, *inter alia*, that the insured improperly invested company funds in its own securities ("Claim 1"), and the insured also failed to collect interest on returned real estate investments ("Claim 3"). *See id.* at 412. The court granted summary judgment and ruled that these claims were not covered because "'investment' is not 'administration' under the [insurance] contract," and because "[t]he collection of . . . accounts [receivable] is a task associated with the management of investment funds, not with the administration of the Plan." *Id.* at 413-14.

As previously noted, the claims in the Underlying Suit are based upon alleged misrepresentations regarding Braddock's investment in Zaycon and purchase of company stock, and his alleged ouster as co-managing member and CEO. These claims do not arise out of any negligent error or omission in the "administration" of an "employee benefit program," and summary judgment should likewise be granted on this issue.[14]

---

[14] The EBL coverage is also subject to an exclusion for damages arising out of an insured's "intentional, dishonest, fraudulent, criminal or malicious act." (*See* Sparling Dec. Ex. A at p. 35; Ex. B at p. 100; Ex. C at p. 165; Ex. D at p. 233.)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 16
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

**E.** **The Underlying Suit Alleges No Claim That Could Fall Within The Policies' Umbrella Liability Or Umbrella EBL Coverage.**

Lastly, the Policies include commercial umbrella liability coverage, which applies to "bodily injury," "property damage" and "personal and advertising injury" that exceed the underlying primary liability limits, or that are not covered or excluded by the underlying insurance.[15]  As discussed in Sections B and C above, the Underlying Suit does not allege any facts or claims that could qualify as "bodily injury," "property damage" or "personal and advertising injury," as those terms are defined in the umbrella coverage.[16,17]  As a matter of law, therefore, the Policies' umbrella coverage for "bodily injury," "property damage" or "personal and advertising injury" does not apply to the Underlying Suit.

The Policies' umbrella insurance also includes EBL coverage, which applies in excess of the EBL coverage provided in the underlying primary

---

[15] Sparling Dec. Ex. A at p. 50; Ex. B at p. 115; Ex. C at p. 180; Ex. D at p. 248.

[16] *See* Sparling Dec. Ex. A at pp. 63, 65-66; Ex. B at pp. 128, 130-31; Ex. C at pp. 193, 195-96; Ex. D at pp. 261, 263-64.

[17] In contrast to underlying Coverage A, the umbrella coverage form defines "bodily injury" as "bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time."  Sparling Dec. Ex. A at p. 63; Ex. B at p. 128; Ex. C at p. 193; Ex. D at p. 261.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 17
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

6900.00170 jh08ck18cw

insurance.[18]  The umbrella EBL coverage only applies to "such hazards for which coverage is afforded by [the] such 'underlying insurance'."[19]  As discussed in Section D above, the allegations in the Underlying Suit are not covered by the underlying EBL coverage.  Consequently, the Policies' umbrella EBL coverage likewise does not apply.

## F.   Cincinnati Has No Ongoing Duty To Defend And Should Be Allowed To Withdraw From The Defense.

Washington applies the "eight corners" rule to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy.  *Expedia, Inc. v. Steadfast Ins. Co.,* 180 Wn.2d 793, 803, 329 P.3d 59 (2014).  The duty to defend exists when the policy could *conceivably* cover the allegations in a complaint. *American Best Food, Inc. v. Alea London, Ltd.,* 168 Wn.2d 398, 404, 229 P.3d 693 (2010).

On the other hand, an insurer has no duty to defend if the claims alleged are clearly not covered by the policy.  *National Surety Co. v. Immunex Corp.*, 176 Wn.2d 872, 879, 297 P.3d 688 (2013) ("Although the duty to defend is broad, it is not triggered by claims that clearly fall outside the policy"); *State Farm Gen. Ins.*

---

[18] Sparling Dec. Ex. A at p. 70; Ex. B at p. 135; Ex. C at p. 200; Ex. D at p. 268.

[19] *Id.*

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 18
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

*Co. v. Emerson,* 102 Wn.2d 477, 486, 687 P.2d 1139 (1984) ("[T]he duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liable to the insured under the policy").

If this Court rules there is no coverage and therefore no obligation to indemnify under Cincinnati's Policies, it necessarily follows that there remains no potential for coverage and that the duty to defend no longer exists.  In *Emerson, supra,* the court recognized this when it held that the policy provides a defense "only if coverage would apply."  *Emerson, supra*, 102 Wn.2d at 486.  Similarly, in *Truck Ins. Co. v. VanPort Homes, Inc.,* 147 Wn.2d 751, 58 P.3d 276 (2002), the Supreme Court encouraged insurers to seek declaratory relief regarding their duty to defend, and indicated that an insurer defending under a reservation of rights may withdraw its defense upon a court determination that it owes no defense.  *Id*. at 760-761.  Likewise, in *Alea London, supra,* 168 Wn.2d at 405, the Washington Supreme Court reiterated that "When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action."

In *Canal Indem. Co. v. Adair Homes, Inc.,* 737 F. Supp. 2d 1294 (W.D. Wash. 2010), *affirmed,* 445 Fed. Appx. 938 (9th Cir. 2011), the court applied *Alea London* and held that an insurer could withdraw from the insured's defense

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 19
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

1

once a declaratory judgment action determined there was no coverage:

2

3

> An insurer's duty to defend an insured ends when it is determined
> that a claim is not covered. *See, i.e., American Best Food, Inc. v.*
> *Alea London, Ltd.,* 168 Wash.2d 398, 405, 229 P.3d 693 (2010);
> *Kirk v. Mt. Airy Ins. Co.,* 134 Wash.2d 558, 561, 951 P.2d 1124
> (1998). The procedure to follow when coverage is uncertain is to
> defend under reservation of rights and seek a declaratory judgment
> regarding the issue of coverage. Where the declaratory judgment
> action determines there is no coverage, as in this case, the insurer,
> Canal, may withdraw from the defense of the insured, Adair Homes.
> *See, i.e., Farmers Ins. Group v. Johnson,* 43 Wash.App. 39, 44, 715
> P.2d 144 (1986). It is only where the facts necessary to determine
> coverage are at issue, that the insurer must maintain a defense
> throughout the underlying litigation. . . .

4

5

6

7

8

9

10

*Id.*, 737 F. Supp. 2d at 1303.

11

12

As discussed above, Cincinnati's Policies provide no coverage for any of

13

the claims alleged in the Underlying Suit. Summary judgment should therefore

14

be granted declaring that Cincinnati has no further duty to defend Zaycon and the

15

Individual Defendants in the Underlying Suit.

16

### III.  <u>CONCLUSION</u>

17

For the foregoing reasons, summary judgment should be granted declaring

18

that Cincinnati has no duty to defend, indemnify, or pay insurance benefits to or

19

on behalf of any defendant herein with respect to the Underlying Suit, and that

20

Cincinnati may immediately cease and withdraw from defending Zaycon and the

21

22

Individual Defendants in the Underlying Suit.

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 20
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00170 jh08ck18cw

1

DATED this <u>10th</u> day of August, 2017.

2

SOHA & LANG, P.S.

3

4

By: ___/s/Gary Sparling_____
    Gary Sparling, WSBA # 23208

5

    Email address sparling@sohalang.com

6

    **Soha & Lang, P.S.**
    1325 Fourth Avenue, Suite 2000

7

    Seattle, WA  98101-2570
    Telephone:  206-624-1800

8

    Facsimile:   206-624-3585
    Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 21
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

6900.00170 jh08ck18cw

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2017 a copy of the foregoing was electronically filed and served in accordance with the Court's electronic filing procedures using the CM/ECF System, which will send notification of such filing to all counsel of record.

Carl J. Oreskovich
Etter, McMahon, Lamberson, Clary & Oreskovich, P.C.
Bank of Whitman
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
Tel: (509) 747-9100
Fax: (509) 623-1439
Email: carl@ettermcmahon.com
*Attorneys for Defendants Zaycon Foods, LLC;*
*Frank and Jane Doe Maresca;*
*Michael and Jane Doe Giunta;*
*Mike and Jane Doe Conrad; and Adam and Jane Doe Kremin*

Dated this 10th day of August, 2017


        */s/Angela Murray*
        Angela Murray
        Legal Secretary to Gary Sparling

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 22
USDC ED WA CAUSE NO.  2:17-cv-00140 SMJ

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6900.00170 jh08ck18cw